UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BADGER MUTUAL INSURANCE COMPANY,

      Plaintiff,

v

#1 BAR AND GRILL LLC D/B/A THE PLAY
HOUSE, VIDA GUERRA, ANA CHERI, JENNIFER
WALCOTT ARCHULETA, INA SCHNITZER,
JAIME EDMONDSON LONGORIA, TARA LEIGH
PATRICK, CIELO JEAN GIBSON, JESSICA HINTON,
ROSIE JONES, VIVIAN KINDLE, JOANNA KRUPA,
LAURIE ANN YOUNG, CAMILA DAVALOS,
MARIANA DAVALOS, LUCY PINDER,
ABIGAIL RATCHFORD, CARISSA ROSARIO,
CLAUDIA SAMPEDRO, TIFFANY TOTH GRAY,
SARA UNDERWOOD, IRINA VORONINA, SHEENA
LEE WEBER, and MASHA LUND,

      Defendants.

Case No.
Hon.

**COMPLAINT FOR
DECLARATORY RELIEF
AND DEMAND FOR JURY
TRIAL**

_____/

John R. Prew (P41891)
Nathan Peplinski (P66596)
HARVEY KRUSE, P.C.
Attorneys for Badger Mutual
1050 Wilshire Drive, Suite 320
Troy, MI  48084
(248) 649-7800
jprew@harveykruse.com
npeplinski@harveykruse.com

_____/

Civil actions between the defendants to this action and directly
relating to the same legal facts/arguments have been previously filed
in this Court.  The actions remain pending.  The defendants have the
following underlying action: *Vida Guerra et al. v. #1 Bar And Grill
LLC d/b/a The Play House, Eastern Dist. Docket No. 2:18-cv-11957-*

HARVEY KRUSE
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

*VAR-RSW.* More importantly, Badger Mutual Insurance has filed suit in *Badger Mutual Ins Co v MDM Restaurants Inc d/b/a The Silver Cricket, et al., Eastern Dist. Docket No. 2:18-cv-12730-NGE-APP,* a case dealing with some of the same parties, the same legal issues and nearly identical factual issues, which is assigned to Judge Nancy Edmunds. This case should also be assigned to Judge Edmunds.

## COMPLAINT FOR DECLARATORY RELIEF
## AND DEMAND FOR JURY TRIAL

**NOW COMES** plaintiff Badger Mutual Insurance Company, by and through its attorneys, Harvey Kruse P.C., and for its Complaint for Declaratory Relief states:

## JURISDICTIONAL AND VENUE ALLEGATIONS

1.    Plaintiff Badger Mutual Insurance Company (Badger Mutual) is an admitted insurance company incorporated in the State of Wisconsin.

2.    Badger Mutual's principal place of business is Milwaukee, Wisconsin.

3.    Badger Mutual conducts business in the State of Michigan, including insuring businesses in the Michigan.

4.    Defendant #1 Bar and Grill LLC d/b/a the Play House ("Play House") is a Michigan corporation.

5.    Play House's principal place of business is Romulus, Michigan

6.    Defendant Vida Guerra ("Guerra") is, and at all times relevant to this action was, a resident of California.

7.    Defendant Ana Cheri ("Cheri") is, and at all times relevant to this action

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

was, a resident of California.

8.      Defenant Jennifer Walcott Archuleta ("Walcott") is, and at all times relevant to this action was, a resident of Arizona.

9.      Defendant Ina Schnitzer a/k/a Jordan Carver ("Carver") is, and at all times relevant to this action was, a resident of California.

10.     Defendant Jaime Edmondson Longoria ("Edmondson") is, and at all times relevant to this action was, a resident of Florida.

11.     Defendant Tara Leigh Patrick a/k/a Carmen Electra ("Electra") is, and at all times relevant to this action was, a resident of California.

12.     Defendant Cielo Jean Gibson ("C.J. Gibson") is, and at all times relevant to this action was, a resident of California.

13.     Defendant Jessica Hinton ("Hinton") is, and at all times relevant to this action was, a resident of California.

14.     Defendant Rosie Jones ("Jones") is, and at all times relevant to this action was, a resident of the United Kingdom.

15.     Jones is not domiciled in the state of Wisconsin.

16.     Defendant Vivian Kindle ("Kindle") is, and at all times relevant to this action was, a resident of California.

17.     Defendant Joanna Krupa ("Krupa") is, and at all times relevant to this action was, a resident of Florida.

18.     Defendant Laurie Ann Young ("L. Young") is, and at all times relevant to

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

this action was, a resident of California.

19. Defendant Camila Davalos ("C. Davalos") is, and at all times relevant to this action was, a resident of Florida.

20. Defendant Mariana Davalos ("M. Davalos") is, and at all times relevant to this action was, a resident of Florida.

21. Defendant Lucy Pinder ("Pinder") is, and at all times relevant to this action was, a resident of United Kingdom.

22. Pinder is not domiciled in the state of Wisconsin.

23. Defendant Abigail Ratchford ("Ratchford") is, and at all times relevant to this action was, a resident of California.

24. Defendant Carissa Rosario ("Rosario") is, and at all times relevant to this action was, a resident of California.

25. Defendant Claudia Sampedro ("Sampedro") is, and at all times relevant to this action was, a resident of Florida.

26. Defendant Tiffany Toth Gray ("Toth") is, and at all times relevant to this action was, a resident of California.

27. Defendant Sara Underwood ("Underwood") is, and at all times relevant to this action was, a resident of Oregon.

28. Defendant Irina Voronina ("Voronina") is, and at all times relevant to this action was, a resident of California.

29. Defendant Sheena Lee Weber ("Weber") is, and at all times relevant to this

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

action was, a resident of California.

30.     Defendant Masha Lund ("Lund") is, and at all times relevant to this action was, a resident of California.

31.     The matter in controversy exceeds the sum of $75,000, exclusive of interest, attorney fees, and costs.

32.     This Court has jurisdiction on the basis of diversity of citizenship by virtue of 28 USC 1332, due to the amount in controversy and the diverse citizenship of the parties as stated in paragraphs 1-8 above.

33.     Venue is proper in this Court pursuant to 28 USC 1391(b).

<u>**UNDERLYING ALLEGATIONS**</u>

34.     Badger Mutual hereby repeats and realleges all of the allegations contained in all of the paragraphs of this complaint as though set forth fully herein.

35.     This is a complaint for declaratory relief brought by Badger Mutual to determine that it owes no duty to provide insurance coverage or a defense to Play House for the claims made against it in the underlying action filed in this Court, *Vida Guerra et al. v. #1 Bar And Grill LLC d/b/a The Play House,* Eastern Dist. Docket No. 2:18-cv-11957-VAR-RSW (hereinafter the underlying action or underlying complaint) (a copy of the complaint for the underlying action is attached as Exhibit 1).

36.     Play House is the operator of a strip club/adult entertainment club (the Play House) located at 13201 Middlebelt Road, Romulus, Wayne County, Michigan.

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

37.    The underlying complaint alleges that Play House owns and/or operates various social media accounts, including a Facebook account (https://www.facebook.com/ThePlayhouseClub) and Instagram account (https://www.instagram.com/playhousedtw/), through which it promotes, endorses, and markets its business, solicits customers, and advertises events for Play House.

38.    The underlying complaint alleges that at all times relevant hereto, Play House had control over the contents of the aforementioned social media accounts.

39.    The underlying complaint alleges that Guerra, Cheri, Walcott, Carver, Edmondson, Electra, C.J. Gibson, Hinton, Jones, Kindle, Krupa, L. Young, C. Davalos, M. Davalos, Pinder, Ratchford, Rosario, Sampedro, Toth, Underwood, Voronina, Weber, and Lund (hereinafter the Model Defendants) are professional models and/or actresses who earn a living by commercializing their respective identities, images, and likenesses for many business endeavors, including the advertisement and promotion of products and services through negotiated, arms-length transactions with reputable commercial brands and companies.

40.    The underlying complaint alleges that a model's reputation directly impacts the commercial value associated with the use of her image, likeness, or identity to promote a product or service and that such a model has the right to control the commercial exploitation of her name, photograph, and likeness.

41.    The underlying complaint alleges that the Model Defendants each expended, and continues to expend, substantial effort, resources and time in building their

respective reputations in the modeling industry and that each carefully considers the reputation, brand, and type of good or service advertised by any potential client prior to authorizing the use of the model's image or likeness.

42.     The Model Defendants allege that their respective careers in modeling and acting have substantial value, derived from the goodwill and reputation that they have built and that they command substantial sums of money for licensed commercial use of their respective images.

43.     The underlying complaint alleges that Play House brazenly and repeatedly, without consent, misappropriated the Model Defendants' images and likenesses for use in Play House's advertising materials produced to market and promote the Play House.

44.     The underlying complaint alleges the following unauthorized uses:

   a.  Guerra,                                          7/19/2016,
       https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
       39204.1073741829.1009563599083665/1224670517572971/?type=3
       &theater

   b.  Guerra,    7/19/2016,    https://www.instagram.com/p/BIDVcMLA-
       Wt/?takenby=playhousedtw

   c.  Cheri,                                             ~6/2016,
       https://www.instagram.com/p/BHaB5qBgOwy/?takenby=playhousedt
       w

   d.  Walcott,                                         2/29/2016,
       https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
       39204.1073741829.1009563599083665/1110332965673394/?type=3
       &theater

   e.  Carver,                                          11/19/2015,
       https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

39204.1073741829.1009563599083665/1052706431436048/?type=3
&theater

f. Carver, 12/14/2015,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1062854397087918/?type=3
&theater

g. Carver, 1/5/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1074897045883653/?type=3
&theater

h. Carver, 6/2/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1180243445349012/?type=3
&theater

i. Carver, 6/2/2016
https://www.instagram.com/p/BGKQugPvPso/?takenby=playhousedt
w

j. Carver, 7/7/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1204596756247014/?type=3
&theater

k. Carver, 7/7/2016,
https://www.instagram.com/p/BHkf1gLgvLp/?takenby=playhousedtw

l. Edmondson, 9/2016, https://www.instagram.com/p/BKgXK80gCcB/

m. Edmondson, 1/7/2017,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1432268796813141/?type=3
&theater

n. Edmondson, 1/7/2017, https://www.instagram.com/p/BO-o-
iTAaLs/?takenby=playhousedtw

o. Edmondson 1/29/2017,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1465169410189746/?type=3
&theater

p. Edmondson, 7/28/2017,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1702672663106085/?type=3

HARVEY KRUSE A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800

&theater

q. Electra,                                                9/28/2015,
   https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
   39204.1073741829.1009563599083665/1027661417273883/?type=3
   &theater

r. C.            J.            Gibson,                     12/22/2016,
   https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
   39204.1073741829.1009563599083665/1394303297276358/?type=3
   &theater

s. C.            J.            Gibson,                     12/23/2016,
   https://www.instagram.com/p/BOXoIMYgU7d/?takenby=playhousedt
   w

t. Hinton,                                                10/5/2015,
   https://www.instagram.com/p/8eKml6PPtp/?takenby=playhousedtw

u. Hinton,                                                10/13/2015,
   https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
   39204.1073741829.1009563599083665/1034855669887791/?type=3
   &theater

v. Hinton,                                                10/24/2015,
   https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
   39204.1073741829.1009563599083665/1039808239392534/?type=3
   &theater

w. Hinton,                                                10/30/2015,
   https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
   39204.1073741829.1009563599083665/1042931145746910/?type=3
   &theater

x. Hinton,                                                4/22/2016,
   https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
   39204.1073741829.1009563599083665/1155727201133970/?type=3
   &theater

y. Jones,                                                 3/28/2016,
   https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
   39204.1073741829.1009563599083665/1133127963393894/?type=3
   &theater

z. Kindle,                                                12/17/2015,
   https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
   39204.1073741829.1009563599083665/1062864003753624/?type=3

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

&theater

aa. Krupa,                                              9/25/2015,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1026233470750011/?type=3
&theater

bb.Krupa,                                              11/28/2015,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1056617534378271/?type=3
&theater

cc. Krupa,                                              12/10/2015,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1059309637442394/?type=3
&theater

dd.L.                          Young,                   5/30/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1180242722015751/?type=3
&theater

ee. C.                         Davalos,                 10/12/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1312409205465768/?type=3
&theater

ff. C.                         Davalos,                 10/12/2016,
https://www.instagram.com/p/BLeCWidATLU/?takenby=playhousedt
w

gg.M.                          Davalos,                 10/12/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1312409205465768/?type=3
&theater

hh.M.                          Davalos,                 10/12/2016,
https://www.instagram.com/p/BLeCWidATLU/?takenby=playhousedt
w

ii. Pinder,                                             5/12/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1165801653459858/?type=3
&theater

jj. Pinder,                                             5/12/2016,
https://www.instagram.com/p/BFUQw02PPuv/?takenby=playhousedt

HARVEY KRUSE
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

HARVEY KRUSE

ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

w

kk. Ratchford, 4/2016, https://www.instagram.com/p/BGeu9B3vPs8/

ll.  Rosario,                                                          4/17/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1151599101546780/?type=3
&theater

mm.    Rosario,                                                       5/2/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1163752593664764/?type=3
&theater

nn. Rosario,                                                          5/3/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1164485606924796/?type=3
&theater

oo. Rosario,                                                          5/4/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1165139153526108/?type=3
&theater

pp. Rosario,                                                          5/5/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1160886820618008/?type=3
&theater

qq. Rosario,                                                          5/5/2016,
https://www.instagram.com/p/BFCH2KaPPvg/?takenby=playhousedt
w

rr.  Sampedro,                                                        4/21/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1155724201134270/?type=3
&theater

ss.  Toth,                                                            12/24/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1401407719899249/?type=3
&theater

tt.  Toth,                                                            12/24/2016,
https://www.instagram.com/p/BOaUXFMgain/?takenby=playhousedt
w

uu. Underwood,                                                        8/24/2016,

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

https://www.instagram.com/p/BJf7hCxgT0K/?takenby=playhousedtw

vv. Underwood,                                                    9/14/2016,
https://www.instagram.com/p/BKV1veXgxOm/?takenby=playhousedt
w

ww.     Underwood,                                               9/20/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1289235047783184/?type=3
&theater

xx. Underwood,                                                   9/20/2016,
https://www.instagram.com/p/BKIZ_uFAXJo/?takenby=playhousedt
w

yy. Underwood,                                                   9/22/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1291813084192047/?type=3
&theater

zz. Underwood,                                                   9/22/2016,
https://www.instagram.com/p/BKqhKatANnF/?takenby=Playhousedt
w

aaa.     Underwood,                                              9/23/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1292170954156260/?type=3
&theater

bbb.     Underwood,                                              9/23/2016,
https://www.instagram.com/p/BKtHdkYgoM_/?takenby=playhousedt
w

ccc.     Voronina,                                               12/19/2016,
https://www.facebook.com/ThePlayhouseClub/photos/a.10116748755
39204.1073741829.1009563599083665/1394223333951021/?type=3
&theater

ddd.     Voronina,                                               12/26/2016,
https://www.instagram.com/p/BOf5VJIAmKo/?takenby=playhousedt
w

eee.     Webber,                                                  ~2016,
http://stripdeals.net/upload/user_profile/1329275634VFUEHCQGPL/
143643492

fff. Lund,                                                        ~2016,
http://stripdeals.net/upload/user_profile/1329275634VFUEHCQGPL/

143643476

45. The underlying complaint alleges that Play House's use of the images and likenesses was for Play House's commercial benefit, using said images to drive traffic to the Play House and increase revenue.

46. The underlying complaint alleges that the use of said images on Play House's social media falsely suggested the Model Defendants' sponsorship of, affiliation with, and participation in Play House's business.

47. The underlying complaint alleges that, as a direct and proximate result of Play House's exploitation of the respective images and identities, Play House made profits or gross revenues.

48. The underlying complaint alleges that the Model Defendants were readily identifiable in that any person seeing the photograph used by Play House with the naked eye could reasonable determine that the person was a relevant Model Defendant.

49. The underlying complaint alleges that the Model Defendants were damaged as a direct and proximate result of Play House's unauthorized use of their images and likenesses as they lost their exclusive rights to control the commercial exploitation of their names, photographs, and likenesses causing them damages.

50. The underlying complaint alleges that Play House never sought nor obtained permission to use said images and likenesses and that the Model Defendants at no time gave permission to use their images to promote Play House's business,

HARVEY KRUSE A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800

services, and/or company, or for any other purpose.

51.     The underlying complaint alleges that the Model Defendants were never compensated for Play House's unauthorized use of their images or likenesses.

52.     The underlying complaint alleges that Play House's unauthorized use of the Model Defendants' images and likenesses was knowing, willful and intentional.

53.     The underlying complaint alleges that Play House had actual knowledge that it was using the Model Defendants' images without compensation or consent and that Play House knowingly misappropriated the images and identities in total disregard of the Model Defendants' rights.

54.     Count I of the underlying complaint alleges willful and deliberate misappropriation of likenesses done for Play House's commercial benefit that resulted in actual damages to the Model Defendants.

55.     Count II of the underlying complaint asserts a claim for unfair competition/false endorsement per the Lanham Act, 15 USC 1125(a) by Play House misappropriating the respective images and likenesses of the Model Defendants in order to create the false impression that the Model Defendants were somehow affiliated with, have endorsed, or otherwise participate in Play House's strip club business, when Play House knew or should have known that it had no right to use the Model Defendants' images or likenesses to promote Play House's strip club business and that the repeated and brazen unauthorized use of the Model Defendants' images and likenesses, without seeking their consent, constitutes

14

willful and deliberate conduct causing damages to the Model Defendants.

56.     Count III of the underlying complaint asserts violations of the Michigan Consumer Protection Act, MCL 445.901, *et seq.* through Play House's scheme to create the false impressions that the Model Defendants were affiliated with and/or performed at Play House's strip club through the unauthorized use of the images and likenesses, which amounted to wrongful, intentional, unlawful, unfair and deceptive conduct.

57.     The underlying complaint seeks: actual, consequential and incidental damages; an amount representing the fair market value of the Model Defendants' services; treble damages; punitive damages; prejudgment interest; disgorgement of profits; reasonable attorney fees; and other relief as deemed proper, just, and equitable by the Court.

### THE 2015 BADGER MUTUAL POLICY

58.     Badger Mutual hereby repeats and realleges all of the allegations contained in all of the paragraphs of this complaint as though set forth fully herein.

59.     Badger Mutual issued a commercial policy of insurance, Policy No. 00690-88546 with an effective policy period of September 21, 2015 through September 21, 2016 to Play House.   (The 2015 Policy is Attached as Exhibit 2 to this Complaint)

60.     The 2015 policy provides Coverage L – Bodily Injury Liability Property Damage Liability coverage pursuant to the following coverage agreement:

15

## COVERAGE L – BODILY INJURY LIABILITY
## PROPERTY DAMAGE LIABILITY

**We** pay all sums which an **insured** becomes legally obligated to pay as **damages** due to **bodily injury** or **property damage** to which this insurance applies.  The **bodily injury** or **property damage** must be caused by an **occurrence** which takes place in the **coverage territory**, and the **bodily injury** or **property damage** must occur during the policy period.

61.   The 2015 policy provides the following relevant definitions:

**DEFINITIONS**

1.   The words **you** and **your** mean the person, persons, or organization named as the insured on the **declarations**.

2.   The words **we, us**, and **our** mean the company providing this coverage.

\* \* \*

5.   **Bodily Injury** means bodily harm, sickness or disease sustained by a person and includes required care and loss of services.  **Bodily injury** includes death that results from bodily harm, sickness, or disease.  **Bodily injury** does not include mental or emotional injury, suffering, or distress that does not result from a physical injury.

\* \* \*

7.   **Damages** means compensation in the form of money for a person who claims to have suffered an injury.

\* \* \*

9.   **Employee** includes a **leased worker**.  **Employee** does not include a **temporary worker**.

\* \* \*

11.   **Insured** means:

a.   **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner, if shown on the **declarations** as an individual;

b.   **you** and all **your** partners or members and their spouses, but only with respect to the conduct of **your** business, if shown on the **declarations** as a partnership or a joint venture; or

c.   **you** and all of **your** executive officers and directors, but only while acting within the scope of their duties, if shown on the **declarations** as an organization (other than

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

HARVEY KRUSE
ATTORNEYS & COUNSELORS A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800

a partnership or a joint venture). It also includes **your** stockholders, but only for their liability as such.

**Insured** also includes:

a. any person or organization, except **your employees,** while acting as **your** real estate manager;

b. if **you** die during the policy period, **your** legal representative while acting within the scope of those duties as such, or a person who has custody of **your** property with respect to liability arising out of the maintenance or use of that property until **your** legal representative is appointed. **Your** legal representative has all **your** rights and duties under this coverage;

c. with respect to the operation, with **your** permission, of mobile equipment:

   1) **your employee** in the course of employment. This does not apply to a fellow **employee** injured in the course of employment;

   2) any other person; including another person or an organization legally liable for the conduct of such person, but only:

      a) for liability arising out of the operation of the equipment; and

      b) if there is no other insurance covering the liability available to them;

   3) no person or organization is an **insured** for **property damage** to property owned by, rented to, in the charge of, or occupied by **you,** or an employer of any person who is an **insured** under paragraph c.

d. **your employees**, for acts within the scope of their employment by **you** (this does not include **your** executive officers) None of these **employees are insureds** for:

   1) **bodily injury to you** or to a fellow **employee;** or

   2) **property damage** to property owned by, rented to, or loaned to **employees,** or any of **your** partners or members and their spouses (if **you** are a joint venture or a partnership).

e. any organization (other than a joint venture or a partnership) newly acquired or formed by **you,** and in which **you** have a majority interest.

Such an organization is not an **insured:**

> 1)  if there is other similar insurance available to it;
> 2)  after 90 days immediately following that acquisition or formation or the end of the policy period, whichever is earlier; or
> 3)  for **bodily injury or property damage** that occurred prior to the acquisition or formation.

No person or organization is an **insured** with respect to the conduct of a current or past partnership or joint venture that is not named on the **declarations** as an **insured.**

\* \* \*

13.  **Limit** means the amount of coverage that applies.

\* \* \*

15.  **Occurrence** means an accident and includes repeated exposure to similar conditions.

\* \* \*

18.  **Property damage** means:

> a.  physical injury or destruction of tangible property; or
> b.  the loss of use of tangible property whether or not it is physically damaged.  Loss of use is deemed to occur at the time of the **occurrence** that caused it.

\* \* \*

20.  **Terms** are all provisions, limitations, exclusions, conditions, and definitions that apply to the Commercial Liability Coverage.

62.  The 2015 policy contains an exclusion for expected or intended injuries and intentional and malicious acts:

**We** do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event.

**EXCLUSIONS THAT APPLY TO BODILY INJURY AND PROPERTY DAMAGE**

1.  **We** do not pay for **bodily injury** or **property damage**:

> a.  which is expected by, directed by, or intended by the **insured**; or

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

b.   that is the result of intentional and malicious acts of the **insured**.

This exclusion does not apply to **bodily injury** that arises out of the use of reasonable force to protect people or property.

63.   The 2015 policy does not provide coverage or a defense to Play House for the claims made in the underlying complaint for Coverage L - Bodily Injury Liability Property Damage Liability coverage for at least the following reasons:

a.   There has been no fortuitous event;

b.   There has been no "bodily injury" as defined in the policy;

c.   There has been no "property damage" as defined in the policy;

d.   There has been no "occurrence" as defined in the policy;

e.   Even if there were "bodily injury," "property damage" or an "occurrence" as defined in the policy alleged in the underlying complaint, any coverage under Coverage L would be excluded by exclusions (1)(a) and (1)(b);

f.   Some or all of the alleged offenses did not occur during the policy period;

g.   No defendant other than Play House is an "insured" as defined in the policy;

h.   There is no coverage for double, treble, or punitive damages.

64.   The 2015 policy provides Coverage P – Personal and Advertising Injury coverage pursuant to the following coverage agreement:

**COVERAGE P – PERSONAL INJURY LIABILITY**
**ADVERTISING INJURY LIABILITY**

**We** pay all sums which an **insured** becomes legally obligated to pay as **damages** due to **personal injury** or **advertising damage** to which this insurance applies.

1.   **We** cover:

a.   **personal injury** arising out of an offense committed in

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

the course of **your** business, excluding advertising, publishing, broadcasting, or telecasting done by **you** or on **your** behalf; and

    b.    **advertising injury** arising out of an offense committed in the course of advertising **your** goods, products, or services.

2.    The **personal injury** or **advertising injury** offense must be committed:

    a.    within the **coverage territory**; and

    b.    during the policy period.

65.    The 2015 policy provides the following additional relevant definitions:

The following definitions are added:

1.    **Advertising injury** means injury (other than **bodily injury**, **property damage**, or **personal injury**) arising out of one or more of the following offenses:

    a.    oral or written publication of material:

        1)    that slanders or libels a person or organization;

        2)    that disparages a person's or organization's goods, products, or services; or

        3)    that violates a person's right of privacy.

    b.    misappropriation of advertising ideas or style of doing business; or

    c.    infringement of copyright, title, slogan, trademark, or trade name.

2.    **Personal injury** means injury (other than **bodily injury**, **property damage**, or **personal injury**) arising out of one or more of the following offenses:

    a.    oral or written publication of material:

        1)    that slanders or libels a person or organization;

        2)    that disparages a person's or an organization's goods, products, or services; or

        3)    that violates a person's right of privacy.

    b.    false arrest, detention, or imprisonment;

    c.    malicious prosecution; or

    d.    wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. This offense must be committed by or on behalf of the owner, landlord, or lessor of the room, dwelling, or premises.

66.    The 2015 policy excludes coverage under Coverage P for willful violation of

an ordinance, statute, or regulation:

> 9.    **We** do not pay for **personal** or **advertising injury** arising out
> of willful violation of an ordinance, statute, or regulation by an
> **insured** or with the **insured's** consent.

67.    The 2015 policy excludes coverage under Coverage P for publication known

to be false:

> 10.    We do not pay for **personal** or **advertising** injury arising out
> of:
> a.    oral or written publication of material done by or at the
> direction of an **insured** who knew it was false; or
> b.    oral or written publication of the same or similar material
> by or on behalf of an **insured** that took place prior to the
> policy.

68.    The 2015 policy excludes coverage under Coverage P for the failure to

conform to advertised quality or performance:

> 12.    **We** do not pay for **advertising injury** arising out of the failure
> of goods, products, or services to conform with advertised
> quality or performance.

69.    The 2015 policy does not provide coverage or a defense for the claims made

in the underlying complaint for Coverage P – Personal Injury Liability Advertising

Injury Liability coverage for at least the following reasons:

> a.    There has been no fortuitous event;
>
> b.    There has been no "advertising injury" as defined in the policy;
>
> c.    There has been no "personal injury" as defined in the policy;
>
> d.    The underlying complaint alleges a personal injury offence committed
> in the course of advertising, publishing, broadcasting, or telecasting

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS     A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

by Play House or on its behalf;

e.  The underlying complaint does not allege oral or written publication;

f.  The underlying complaint does not allege a violation of a right to privacy;

g.  The underlying complaint does not allege slander or libel of a person;

h.  The underlying complaint does not allege disparagement of a person's goods, product or services;

i.  Some or all of the alleged offenses did not occur during the policy period;

j.  Even if there were "advertising injury" or "personal injury" occurring during the policy period, coverage would be excluded by exclusions (9), (10), and (12);

k.  No defendant other than Play House is an "insured" as defined in the policy;

l.  There is no coverage for double, treble, or punitive damages.

70.  The 2015 policy contains a Punitive Damage Exclusion Endorsement.

71.  The Punitive Damage Exclusion Endorsement excludes coverage for punitive, exemplary, or vindictive damages:

The following exclusion is added:
**We** do not pay for punitive, exemplary, or vindictive **damages**.

72.  Under the terms of the 2015 policy, Badger Mutual owes no coverage for the claims raised in the underlying complaint.

73.  The 2015 policy contains an Information Distribution and Recording Violations Exclusion endorsement.

74.  The Information Distribution and Recording Violations Exclusion

HARVEY KRUSE    A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

endorsement excludes coverage for any claimed damage arising directly or indirectly out of a violation or alleged violation of any federal, state, or local law, regulation, statute, or ordinance regarding the distribution of material or information:

> The following exclusion is added:
> **We** do not pay for **bodily injury** or **property damage** (or **personal injury** or **advertising injury**, if provided by the Commercial Liability Coverage) arising directly or indirectly out of violations or alleged violations of:
>
> <p style="text-align:center">* * *</p>
>
> d.    any other federal, state, or local law, regulation, statute, or ordinance that restricts, prohibits, or otherwise pertains to the collecting, communicating, recording, printing, transmitting, sending, disposal, or distribution of material or information.

75.    Under the terms of the 2015 policy, Badger Mutual owes no coverage for the claims raised in the underlying complaint.

   WHEREFORE, Badger Mutual prays for a judgment that it has no duty to provide coverage or a defense to Play House or anyone else for any of the allegations and claims made against it in the underlying complaint and that Badger Mutual is entitled to is costs and attorney fees for having to file this action.

## THE 2016 BADGER MUTUAL POLICY

76.    Badger Mutual hereby repeats and realleges all of the allegations contained in all of the paragraphs of this complaint as though set forth fully herein.

77.    Badger Mutual issued a commercial policy of insurance, Policy No. 00690-88546 with an effective policy period of September 21, 2016 through September

**HARVEY KRUSE**    A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

21, 2017 to Play House. (The 2016 Policy is Attached as Exhibit 3 to this Complaint)

78.     The 2016 policy provides Coverage L – Bodily Injury Liability Property Damage Liability coverage pursuant to the following coverage agreement:

> **COVERAGE L   –        BODILY INJURY LIABILITY**
> **                              PROPERTY DAMAGE LIABILITY**
>
> **We** pay all sums which an **insured** becomes legally obligated to pay as **damages** due to **bodily injury** or **property damage** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence** which takes place in the **coverage territory**, and the **bodily injury** or **property damage** must occur during the policy period.

79.     The 2016 policy provides the following relevant definitions:

> **DEFINITIONS**
> 1.     The words **you** and **your** mean the person, persons, or organization named as the insured on the **declarations**.
> 2.     The words **we, us**, and **our** mean the company providing this coverage.
>                         * * *
> 5.     **Bodily Injury** means bodily harm, sickness or disease sustained by a person and includes required care and loss of services. **Bodily injury** includes death that results from bodily harm, sickness, or disease. **Bodily injury** does not include mental or emotional injury, suffering, or distress that does not result from a physical injury.
>                         * * *
> 7.     **Damages** means compensation in the form of money for a person who claims to have suffered an injury.
>                         * * *
> 9.     **Employee** includes a **leased worker**. **Employee** does not include a **temporary worker**.
>                         * * *
> 11.   **Insured** means:
>        a.     **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner, if

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS     A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

shown on the **declarations** as an individual;

b.   **you** and all **your** partners or members and their spouses, but only with respect to the conduct of **your** business, if shown on the **declarations** as a partnership or a joint venture; or

c.   **you** and all of **your** executive officers and directors, but only while acting within the scope of their duties, if shown on the **declarations** as an organization (other than a partnership or a joint venture).  It also includes **your** stockholders, but only for their liability as such.

**Insured** also includes:

a.   any person or organization, except **your employees,** while acting as **your** real estate manager;

b.   if **you** die during the policy period, **your** legal representative while acting within the scope of those duties as such, or a person who has custody of **your** property with respect to liability arising out of the maintenance or use of that property until **your** legal representative is appointed. **Your** legal representative has all **your** rights and duties under this coverage;

c.   with respect to the operation, with **your** permission, of mobile equipment:

   1)   **your employee** in the course of employment. This does not apply to a fellow **employee** injured in the course of employment;

   2)   any other person; including another person or an organization legally liable for the conduct of such person, but only:

      a)   for liability arising out of the operation of the equipment; and

      b)   if there is no other insurance covering the liability available to them;

   3)    no person or organization is an **insured** fo **property damage** to property owned by, rented to, in the charge of, or occupied by **you,** or an employer of any person who is an **insured** under paragraph c.

d.   **your employees**, for acts within the scope of their employment by **you** (this does not include **your** executive officers) None of these **employees are insureds** for:

25

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

1) **bodily injury to you** or to a fellow **employee;** or
2) **property damage** to property owned by, rented to, or loaned to **employees,** or any of **your** partners or members and their spouses (if **you** are a joint venture or a partnership).

e.  any organization (other than a joint venture or a partnership) newly acquired or formed by **you,** and in which **you** have a majority interest.

Such an organization is not an **insured:**

1) if there is other similar insurance available to it;
2) after 90 days immediately following that acquisition or formation or the end of the policy period, whichever is earlier; or
3) for **bodily injury or property damage** that occurred prior to the acquisition or formation.

 No person or organization is an **insured** with respect to the conduct of a current or past partnership or joint venture that is not named on the **declarations** as an **insured.**

\* \* \*

13. **Limit** means the amount of coverage that applies.

\* \* \*

15. **Occurrence** means an accident and includes repeated exposure to similar conditions.

\* \* \*

18. **Property damage** means:

a.  physical injury or destruction of tangible property; or
b.  the loss of use of tangible property whether or not it is physically damaged.  Loss of use is deemed to occur at the time of the **occurrence** that caused it.

\* \* \*

20. **Terms** are all provisions, limitations, exclusions, conditions, and definitions that apply to the Commercial Liability Coverage.

80. The 2016 policy contains an exclusion for expected or intended injuries and

intentional and malicious acts:

**We** do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that

contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event.

**EXCLUSIONS THAT APPLY TO BODILY INJURY AND PROPERTY DAMAGE**

1.     **We** do not pay for **bodily injury** or **property damage**:

    a.     which is expected by, directed by, or intended by the **insured**; or

    b.     that is the result of intentional and malicious acts of the **insured**.

This exclusion does not apply to **bodily injury** that arises out of the use of reasonable force to protect people or property.

81.   The 2016 policy does not provide coverage or a defense Play Hose for the claims made in the underlying complaint for Coverage L - Bodily Injury Liability Property Damage Liability coverage for at least the following reasons:

    a.   There has been no fortuitous event;

    b.   There has been no "bodily injury" as defined in the policy;

    c.   There has been no "property damage" as defined in the policy;

    d.   There has been no "occurrence" as defined in the policy;

    e.   Even if there were "bodily injury," "property damage" or an "occurrence" as defined in the policy alleged in the underlying complaint, any coverage under Coverage L would be excluded by exclusions (1)(a) and (1)(b);

    f.   Some or all of the alleged offenses did not occur during the policy period;

    g.   No defendant other than Play House is an "insured" as defined in the policy;

    h.   There is no coverage for double, treble, or punitive damages.

82.   The 2016 policy provides Coverage P – Personal and Advertising Injury coverage pursuant to the following coverage agreement:

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

**COVERAGE P – PERSONAL INJURY LIABILITY**
**ADVERTISING INJURY LIABILITY**

**We** pay all sums which an **insured** becomes legally obligated to pay as **damages** due to **personal injury** or **advertising damage** to which this insurance applies.

1.    **We** cover:

    a.    **personal injury** arising out of an offense committed in the course of **your** business, excluding advertising, publishing, broadcasting, or telecasting done by **you** or on **your** behalf; and

    b.    **advertising injury** arising out of an offense committed in the course of advertising **your** goods, products, or services.

2.    The **personal injury** or **advertising injury** offense must be committed:

    a.    within the **coverage territory**; and

    b.    during the policy period.

83.    The 2016 policy provides the following additional relevant definitions:

The following definitions are added:

1.    **Advertising injury** means injury (other than **bodily injury**, **property damage**, or **personal injury**) arising out of one or more of the following offenses:

    a.    oral or written publication of material:

        1)    that slanders or libels a person or organization;

        2)    that disparages a person's or organization's goods, products, or services; or

        3)    that violates a person's right of privacy.

    b.    misappropriation of advertising ideas or style of doing business; or

    c.    infringement of copyright, title, slogan, trademark, or trade name.

2.    **Personal injury** means injury (other than **bodily injury**, **property damage**, or **personal injury**) arising out of one or more of the following offenses:

    a.    oral or written publication of material:

        1)    that slanders or libels a person or organization;

        2)    that disparages a person's or an organization's goods, products, or services; or

        3)    that violates a person's right of privacy.

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

**HARVEY KRUSE** A PROFESSIONAL CORPORATION

ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION

1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

      b.     false arrest, detention, or imprisonment;

      c.     malicious prosecution; or

      d.     wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. This offense must be committed by or on behalf of the owner, landlord, or lessor of the room, dwelling, or premises.

84.    The 2016 policy excludes coverage under Coverage P for willful violation of an ordinance, statute, or regulation:

    9.    **We** do not pay for **personal** or **advertising injury** arising out of willful violation of an ordinance, statute, or regulation by an **insured** or with the **insured's** consent.

85.    The 2016 policy excludes coverage under Coverage P for publication known to be false:

    10.   We do not pay for **personal** or **advertising** injury arising out of:

      a.     oral or written publication of material done by or at the direction of an **insured** who knew it was false; or

      b.     oral or written publication of the same or similar material by or on behalf of an **insured** that took place prior to the policy.

86.    The 2016 policy excludes coverage under Coverage P for the failure to conform to advertised quality or performance:

    12.    **We** do not pay for **advertising injury** arising out of the failure of goods, products, or services to conform with advertised quality or performance.

87.    The 2016 policy does not provide coverage or a defense to Play House for the claims made in the underlying complaint for Coverage P – Personal Injury Liability Advertising Injury Liability coverage for at least the following reasons:

a.  There has been no fortuitous event;

b.  There has been no "advertising injury" as defined in the policy;

c.  There has been no "personal injury" as defined in the policy;

d.  The underlying complaint alleges a personal injury offence committed in the course of advertising, publishing, broadcasting, or telecasting by Play House or on its behalf;

e.  The underlying complaint does not allege oral or written publication;

f.  The underlying complaint does not allege a violation of a right to privacy;

g.  The underlying complaint does not allege slander or libel of a person;

h.  The underlying complaint does not allege disparagement of a person's goods, product or services;

i.  Some or all of the alleged offenses did not occur during the policy period;

j.  Even if there were "advertising injury" or "personal injury" occurring during the policy period, coverage would be excluded by exclusions (9), (10), and (12);

k.  No defendant other than Play House is an "insured" as defined in the policy;

l.  There is no coverage for double, treble, or punitive damages.

88.  The 2016 policy contains a Punitive Damage Exclusion Endorsement.

89.  The Punitive Damage Exclusion Endorsement excludes coverage for punitive, exemplary, or vindictive damages:

> The following exclusion is added:
> **We** do not pay for punitive, exemplary, or vindictive **damages**.

90.  Under the terms of the 2016 policy, Badger Mutual owes no coverage for the claims raised in the underlying complaint.

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

91.   The 2016 policy contains an Information Distribution and Recording Violations Exclusion endorsement.

92.   The Information Distribution and Recording Violations Exclusion endorsement excludes coverage for any claimed damage arising directly or indirectly out of a violation or alleged violation of any federal, state, or local law, regulation, statute, or ordinance regarding the distribution of material or information:

> The following exclusion is added:
> **We** do not pay for **bodily injury** or **property damage** (or **personal injury** or **advertising injury**, if provided by the Commercial Liability Coverage) arising directly or indirectly out of violations or alleged violations of:
>
> * * *
>
> d.     any other federal, state, or local law, regulation, statute, or ordinance that restricts, prohibits, or otherwise pertains to the collecting, communicating, recording, printing, transmitting, sending, disposal, or distribution of material or information.

93.   Under the terms of the 2016 policy, Badger Mutual owes no coverage for the claims raised in the underlying complaint.

94.   The 2016 policy contains a Cyber Liability Insurance endorsement.

95.   The Cyber Liability Insurance endorsement only provides coverage pursuant to the following coverage endorsement:

> **SECTION I–CYBER LIABILITY COVERAGE AGREEMENTS**
> In consideration of the premium paid and subject to all terms, conditions, definitions, exclusions and other provisions of this Endorsement, **we** agree as follows:
> A.     MULTIMEDIA LIABILITY COVERAGE

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

31

**We** will pay, up to the limits shown in the Schedule, the **damages** an **insured** becomes legally obligated to pay and **defense costs** resulting from a **claim** for an actual or alleged **multimedia peril**, but only if:

(1) Such **claim** is first made against the **insured** during the **endorsement period**.

(2) The **insured** reports such **claim** to **us** no later than sixty (60) days after the **claim** is first made against the **insured**; and

(3) The **multimedia peril** takes place or first commences on or after the **retroactive date**.

B. SECURITY AND PRIVACY LIABILITY COVERAGE

**We** will pay, up to the limits shown in the Schedule, the **damages** an **insured** becomes legally obligated to pay and **defense costs** resulting from a **claim** for an actual or alleged **security and privacy wrongful act**, but only if:

(1) Such **claim** is first made against the **insured** during the **endorsement period**;

(2) The **insured** reports such **claim** to **us** no later than sixty (60) days after the **claim** is first made against the **insured**; and

(3) The **security and privacy wrongful act** takes place or first commences on or after the **retroactive date**.

C. PRIVACY REGULATORY DEFENSE AND PENALTIES COVERAGE

**We** will pay, up to the limits shown in the Schedule, the **regulatory fines and penalties** and/or any **regulatory compensatory award** an **insured** becomes legally obligated to pay and **defense costs** resulting from a **claim** for an actual or alleged **security breach** or **privacy breach**, but only if:

(1) Such **claim** is first made against the **insured** during the **endorsement period**;

(2) The **insured** reports such **claim** to **us** no later than sixty (60) days after the **claim** is first made against the **insured**; and

(3) The **security and privacy breach** takes place or first commences on or after the **retroactive date**.

\* \* \*

## SECTION II – DEFENSE, INVESTIGATION, AND SETTLEMENT

**We** will have the right and duty to defend any **claim** under Coverage Agreement A, Coverage Agreement B, Coverage Agreement C, or Coverage Agreement D, even if the allegations of the **claim** are groundless, false or fraudulent. **We** have the right to appoint counsel to defend any such **claim**.

**We** may investigate or settle any **claim** at its sole discretion. The applicable limits of insurance will be reduced and may be completely exhausted by payment of **defense costs**. **We** will not be obligated to pay or defend any **claim** after the applicable limit of **our** liability hereunder has been exhausted.

No **insured** will incur any **defense costs** or other expenses, or settle any **claim**, assume any contractual obligation, admit liability, voluntarily make any payment, or otherwise consent to any settlement or judgment with respect to any **claim** without **our** prior written consent, which will not be unreasonably withheld. **We** will not be liable for any **defense costs** or other expenses, settlement or judgment to which **we** have not consented.

96.   The Cyber Liability Insurance endorsement provides the following relevant

definitions:

When used in this Endorsement:

<div align="center">* * *</div>

I.   **Claim** means:

(1)   With respect to Coverage Agreement A (Multimedia Liability) and Coverage Agreement B (Security and Privacy Liability):

(a)   Any written demand for monetary or non-monetary relief made against an **insured**;

(b)   Any civil proceeding or arbitration proceeding initiated against an **insured**, commenced by the service of a complaint or similar pleading or notice; or

(c)   Any written request to toll or waive a statute of limitations relating to a potential **claim** against an **insured**, including any appeal therefrom;

A **claim** under Coverage Agreement A or Coverage Agreement B will be deemed to be first made when an **insured** first

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

receives notice of any of (1)(a) through (1)(c) above.

(2)    With respect to Coverage Agreement C (Privacy Regulatory Defense and Penalties), a **government investigation** commenced against an **insured** by letter, notice, complaint, or order of investigation. A **claim** under Coverage Agreement C will be deemed to be first made when it is first received by an **insured**.

(3)    With respect to Coverage Agreement D (PCI DSS Assessment Coverage), any written demand made against an **insured** by an **acquiring bank** or **card association** for a **PCI DSS assessment** due to the **insured's** non-compliance with **PCI Data Security Standards**. A **claim** under Coverage Agreement D will be deemed to be first made when such written demand is received by an **insured**.

(4)    With respect to Coverage Agreement E (Privacy Breach Response Costs, Notification Expenses, and Customer Support and Credit Monitoring Expenses), **your** report to **us** of an **adverse media report**, **security breach,** or **privacy breach**. A **claim** under Coverage Agreement E will be deemed to be first made when such report is received by **us** or **our** authorized agent.

(5)    With respect to Coverage Agreement F (Network Asset Protection), **your** report to **us** of a **covered cause of loss**. A **claim** under Coverage Agreement F will be deemed to be first made when such report is received by **us** or **our** authorized agent.

(6)    With respect to Coverage Agreement G (Cyber Extortion), **your** report to **us** of a **cyber extortion threat**. A **claim** under Coverage Agreement G will be deemed to be first made when such report is received by **us** or **our** authorized agent.

(7)    With respect to Coverage Agreement H (Cyber Terrorism), **your** report to **us** of an **act of cyber terrorism**. A **claim** under Coverage Agreement H will be deemed to be first made when such report is received by **us** or **our** authorized agent.

(8)    With respect to Coverage Agreement I (BrandGuard), **your** report to **us** of **brand loss** directly caused by an **adverse media report** or **notification**. A **claim** under Coverage Agreement I will be deemed to be first made

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

when such report is received by **us** or **our** authorized agent.

\* \* \*

T.  **Damages** means the amount of money an **insured** is legally obligated to pay as a result of a covered **claim** under Coverage Agreement A or Coverage Agreement B, including judgments, legal fees and costs awarded against an **insured** pursuant to such judgments, and settlements negotiated with **our** consent. **Damages** does not include:

(1)  Taxes;

(2)  Any amount for which an **insured** is absolved from legal responsibility to make payment to a third party;

(3)  Amounts owed under contract;

(4)  **Your** future profits or royalties or any return, withdrawal, restitution or reduction of **your** professional fees, profits or other charges;

(5)  Punitive, liquidated or exemplary damages or the multiplied portion of multiplied damages;

(6)  Fines, sanctions or penalties;

(7)  Any matters that are deemed uninsurable under applicable law;

(8)  The costs to comply with orders granting injunctive or non-monetary relief, including specific performance or any agreement to provide such relief;

(9)  Disgorgement of any remuneration or financial advantage to which **you** were not legally entitled; or

(10)  Settlements negotiated without **our** consent.

\* \* \*

V.  **Defense costs** means reasonable and necessary legal fees, costs and expenses incurred with **our** consent in the investigation, defense and appeal of any **claim** under Coverage Agreement A, Coverage Agreement B, Coverage Agreement C, or Coverage Agreement D. **Defense costs** does not include any wages, salaries, fees, overhead or other charges incurred by, or paid to, any **insured** for any time spent in cooperating in the defense and investigation of any **claim** or potential **claim** under this Endorsement.

\* \* \*

BB.  **Endorsement period** means the period of coverage commencing on the effective date specified on this Endorsement and ending on the earlier of the termination,

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

expiration or cancellation date of the policy to which this Endorsement attaches. **Endorsement period** does not include any extended reporting period.

\* \* \*

FF.   **Insured** means the **named insured** and current executive officers, partners, directors, stockholders, trustees, or employees of the **named insured**, but only while such individuals are acting within the scope of their duties on behalf of the **named insured**.

\* \* \*

HH.   **Internet** means the worldwide public network of computers which enables the transmission of electronic **data** between different users, including a private communications network existing within a shared or public network platform.

\* \* \*

KK.   **Multimedia peril** means the release or display of any **electronic media** on **your internet** site or **print media** for which **you** are solely responsible, which directly results in any of the following:

(1)   Any form of defamation or other tort related to the disparagement or harm to the reputation or character of any person or organization, including libel, slander, product disparagement, or trade libel

(2)   Invasion, infringement or interference with an individual's right of privacy including false light, intrusion upon seclusion, commercial misappropriation of name, person, or likeness, and public disclosure of private facts;

(3)   Plagiarism, piracy, or misappropriation of ideas under an implied contract;

(4)   Infringement of copyright, trademark, trade name, trade dress, title, slogan, service mark or service name; or

(5)   Domain name infringement or improper deep-linking or framing.

LL.   **Named insured** means the person(s) or organization(s) listed on the Declarations of the Policy to which this Endorsement is attached.

MM.   **Notification** means **notification** to individuals in the event of a **security breach** or a **privacy breach**.

\* \* \*

VV.   **Privacy breach** means any of the below, whether actual or

alleged, but only if committed or allegedly committed by **you** or by others acting on **your** behalf for whom **you** are legally responsible, including **BPO service providers** and **outsourced IT service providers**:

(1) A common law breach of confidentiality, infringement, or violation of any right to privacy, including, but not limited to, a breach of **your** privacy policy, false light, intrusion upon a person's seclusion, commercial misappropriation of name, person, or likeness, or public disclosure of a person's private information; or

(2) Any breach of privacy regulations, as they currently exist and as amended, associated with the confidentiality, access, control, and use of personally identifiable, non-public information, including, but not limited to:

(a) Health Insurance Portability and Accountability Act of 1996 (Public Law 104- 191), known as HIPAA, and related state medical privacy laws;

(b) Gramm-Leach-Bliley Act of 1999 (G-L-B), also known as the Financial Services Modernization Act of 1999;

(c) State and federal statutes and regulations regarding the security and privacy of consumer information;

(d) Governmental privacy protection regulations or laws associated with the control and use of personal information;

(e) Privacy provisions of consumer protection laws, including the Federal Fair Credit Reporting Act (FCRA) and similar state laws;

(f) Title XIII, the Health Information Technology for Economic and Clinical Health Act ("HITECH"), of the American Recovery and Reinvestment Act of 2009 ("ARRA").

A series of continuing **privacy breaches** or related or repeated **privacy breaches** will be considered a single **privacy breach** and will be deemed to have occurred when the first of such **privacy breaches** occurred.

WW. **Privacy breach response costs** means those reasonable and necessary fees and expenses **you** incur, with **our** prior written consent, for the employment of a public relations consultant, if such action is deemed to necessary in order to avert or mitigate any actual or potential material damage to **your reputation** or

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

brands, which results or reasonably will result from the publication of an **adverse media report**.

* * *

AAA. **Regulatory compensatory award** means a sum of money an **insured** is legally obligated to pay as an award or fund for affected individuals, including a regulatory agency's monetary award to a third party, due to an adverse judgment or settlement arising out of a **government investigation**. **Regulatory compensatory award** does not include a criminal penalty or fine issued by a regulatory agency of any kind, including federal, state, or local governmental agencies.

BBB. **Regulatory fines and penalties** means any civil fines and penalties imposed against an **insured** as a result of a **government investigation.**

* * *

DDD. **Retroactive date** means the date specified as such on this Endorsement, on or after which any **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report** must have taken place in order to be considered for coverage under this Endorsement.

EEE. **Security and privacy wrongful act** means any of the following acts, whether actual or alleged, but only if committed or allegedly committed by an **insured**:

(1) Failure to prevent or hinder **a security breach** that in turn results in:

(a) The alteration, copying, corruption, destruction, deletion, or damage to electronic **data** stored on an **insured computer system**;

(b) Theft, loss or unauthorized disclosure of electronic and nonelectronic confidential commercial, corporate, personally identifiable, or private information that is in **your** care, custody or control;

(c) Theft, loss, or unauthorized disclosure of electronic and nonelectronic confidential commercial, corporate, personally identifiable, or private information that is in the care, custody or control of a **BPO service provider** or **outsourced IT service provider** that is holding, processing, or

transferring such information on **your** behalf; provided, however, that the theft, loss or unauthorized disclosure occurs while **your** written contract with such **BPO service provider** or **outsourced IT service provider** is in effect; or

(d)    **Unauthorized use** of, or **unauthorized access** to, a **computer system** other than an **insured computer system**.

(2)    Failure to timely disclose a **security breach** affecting personally identifiable, nonpublic information or the failure to dispose of personally identifiable, nonpublic information within the required time period, in violation of privacy regulations in effect now or in the future;

(3)    Failure to prevent the transmission of **malicious code** or **computer virus** from an **insured computer system** to the **computer system** of a third party;

(4)    A **privacy breach**;

(5)    Failure to prevent or hinder participation by an **insured computer system** in a **denial of service attack** directed against **internet** sites or the **computer system** of any third party; or

(6)    Loss of employee information.

FFF.    **Security breach** means:

(1)    **Unauthorized access** to, or **unauthorized use** of, an **insured computer system**, including **unauthorized access** or **unauthorized use** resulting from the theft of a password from an **insured computer system** or from any **insured**;

(2)    A **denial of service attack** against an **insured computer system**; or

(3)    Infection of an **insured computer system** by **malicious code** or the transmission of **malicious code** from an **insured computer system**, whether any of the foregoing is a specifically targeted attack or a generally distributed attack. A series of continuing **security breaches**, relate or repeated **security breaches**, or multiple **security breaches** resulting from a continuing failure of computer security will be considered a single **security breach** and will be deemed to have occurred when the first of such **security breaches** occurred.

\* \* \*

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

KKK.   **We**, **us**, and **our** mean the Company providing this coverage.

LLL.   **You** and **your** mean the **named insured**.

97.   The Cyber Liability Insurance endorsement provides the following exclusions:

The insurance provided under this Endorsement does not apply to:

A.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report**:

(1)   Which was the subject of written notice given to us or to any other insurer prior to your initial effective date of Cyber Liability coverage;

(2)   Which was the subject of any prior and/or pending written demand made against an **insured**, or a civil, administrative or arbitration proceeding commenced against an **insured**, prior to **your** initial effective date of Cyber Liability coverage, or that involved the same or substantially the same fact, circumstance, or situation underlying or alleged in such prior demand or proceeding;

(3)   Which an **insured** had knowledge of prior to **your** initial effective date of Cyber Liability coverage.

\* \* \*

E.   Any **claim** based covered under any other section of the Policy to which this endorsement attaches.

\* \* \*

H.   Any **claim** for unfair competition, price fixing, deceptive trade practices, restraint of trade, or violation of any anti-trust laws.

\* \* \*

O.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

(1)   Any willful, deliberately dishonest, malicious, or fraudulent act or omission;

(2)   Any intentional violation of the law or of **your** privacy policy; or

(3)   The gaining in fact of any profit, remuneration or

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

financial advantage to which an **insured** was not legally entitled.

If committed by any insured, whether acting alone or in collusion with other persons. Notwithstanding the foregoing, the insurance afforded by this Endorsement will apply to **defense costs** incurred in defending any such **claim** until such time as there is a judgment or other final adjudication adverse to the **insured** establishing such willful, dishonest, fraudulent, or malicious conduct. **We** will have the right to recover **defense costs** incurred in defending such **claim** from those parties found to have committed such willful, dishonest, fraudulent, or malicious conduct.

This exclusion does not apply to:

(1)     Any **insured** that did not commit, participate in, cooperate in, contribute to, or have knowledge of any willful, dishonest, fraudulent, or malicious conduct described in this exclusion; or

(2) A **claim** resulting from sabotage by your **employee**.

P.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

(1)     Any actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report** that took place or first commenced prior to the **retroactive date**; or

(2)     Any actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach, covered cause of loss, cyber extortion threat, act of cyber terrorism**, or **adverse media report** that took place on or after the **retroactive date**, which, together with an actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report** that took place prior to the **retroactive date**, would constitute related **multimedia perils**, **security and privacy wrongful acts**, **security breaches**, **privacy breaches**, **covered causes of loss**, **cyber extortion threats**, **acts of cyber terrorism**, or **adverse media reports**.

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS     A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

For purposes of this exclusion, **multimedia perils**, **security and privacy wrongful acts**, **security breaches**, **privacy breaches**, **covered causes of loss**, **cyber extortion threats**, **acts of cyber terrorism** or **adverse media reports** will be deemed related if we determine that they are logically or causally connected by any common fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

\* \* \*

Y.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services.

\* \* \*

NN.   Any fines or penalties imposed due to willful or intentional acts of an **insured**.

98.   The Cyber Liability Insurance endorsement contain a notice provision setting proper notice as a condition precedent to coverage:

A.   NOTICE OF A CLAIM

(1)   As a condition precedent to coverage under Coverage Agreement A, B, C or D, **you** must give **us** or **our** authorized agent notice of any **claim** made against an **insured** no later than sixty (60) days after the **claim** is first made against the **insured**.

(2)   As a condition precedent to coverage under Coverage Agreement E, F, G, H or I, **you** must give **us** or **our** authorized agent notice of **your claim** during the **endorsement period**, but no later than 60 days from the date any **insured** first discovers the event or incident giving rise to such **claim**.

(3)   **You** must provide **us** with copies of all documentation comprising the **claim** as well as any authorization, cooperation, or assistance as **we** may require.

(4)   **We** will not be obligated to pay any amounts incurred prior to **our** receipt of a **claim** or any amounts incurred without **our** prior written consent.

B.   NOTICE OF A POTENTIAL CLAIM

If, during the **endorsement period**, any **insured** first becomes aware of any facts or circumstances which could give rise to a **claim** covered under this Endorsement, and **you** provide **us** or **our** authorized agent with notice during the **endorsement period** of:

(1)     The details regarding such facts or circumstances;

(2)     The nature of the loss incurred;

(3)     The identity of the potential claimant(s) involved;

(4)     The manner in which the **insured** first became aware of the facts or circumstances; and

(5)     The consequences which have resulted or may result,

then any **claim** subsequently arising out of such reported facts or circumstances will be deemed to be a **claim** first made on the date notice complying with the foregoing requirements was first received by **us**.

99.     The 2016 policy does not provide coverage or a defense to Play House for the claims made in the underlying complaint for Cyber Liability Insurance endorsement coverage for at least the following reasons:

a.  There has been no fortuitous event;

b.  There has been no "damages" as defined in the endorsement;

c.  There are no "defense costs" as defined in the endorsement;

d.  There has been no "multimedia peril" as defined in the endorsement;

e.  Any claim was not first made during the endorsement period;

f.  The insured did not timely report any claim;

g.  Any claimed "multimedia peril" did not first commence on or after the "retroactive date" as defined in the endorsement;

h.  There has been no "security and privacy wrongful act" as defined in the endorsement;

i.  Any claimed "security and privacy wrongful act" did not first commence on or after the "retroactive date" as defined in the endorsement;

j.  There has been no "regulatory fines and penalties" as defined in the policy;

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

k.  There has been no "regulatory compensatory award" as defined in the policy;

l.  There has been no "security breach" as defined in the policy;

m.  There has been no "privacy breach" as defined in the policy;

n.  Any claimed "security breach" or "privacy breach" did not first commence after the retroactive date;

o.  Any "claim" was not first made against the insured during the "endorsement period" as defined in the policy;

p.  Any "security and privacy breach" did not first commence on or after the "retroactive date" as defined in the policy;

q.  Even if such requirements were met, coverage would be excluded pursuant to Exclusions (A), (E), (H), (O), (P), (Y) and (NN);

r.  No defendant other than Play House is an "insured" as defined in the policy;

s.  There has been a failure to comply with the required notice provisions;

t.  There is no coverage for double, treble, or punitive damages.

100.   Under the terms of the 2016 policy, Badger Mutual owes no coverage for the claims raised in the underlying complaint.

WHEREFORE, Badger Mutual prays for a judgment that it has no duty to provide coverage or a defense to Play House or anyone else for any of the allegations and claims made against it in the underlying complaint and that Badger Mutual is entitled to is costs and attorney fees for having to file this action.

## THE 2017 BADGER MUTUAL POLICY

101.   Badger Mutual hereby repeats and realleges all of the allegations contained in all of the paragraphs of this complaint as though set forth fully herein.

102.   Badger Mutual issued a commercial policy of insurance, Policy No. 00690-

88546 with an effective policy period of September 21, 2017 through September 21, 2018 to Play House.   (The 2017 Policy is Attached as Exhibit 4 to this Complaint)

103.  The 2017 policy provides Coverage L – Bodily Injury Liability Property Damage Liability coverage pursuant to the following coverage agreement:

> **COVERAGE L   –     BODILY INJURY LIABILITY**
> **                           PROPERTY DAMAGE LIABILITY**
>
> **We** pay all sums which an **insured** becomes legally obligated to pay as **damages** due to **bodily injury** or **property damage** to which this insurance applies.  The **bodily injury** or **property damage** must be caused by an **occurrence** which takes place in the **coverage territory**, and the **bodily injury** or **property damage** must occur during the policy period.

104.  The 2017 policy provides the following relevant definitions:

> **DEFINITIONS**
> 1.    The words **you** and **your** mean the person, persons, or organization named as the insured on the **declarations**.
> 2.    The words **we, us**, and **our** mean the company providing this coverage.
>
> \* \* \*
>
> 5.    **Bodily Injury** means bodily harm, sickness or disease sustained by a person and includes required care and loss of services.  **Bodily injury** includes death that results from bodily harm, sickness, or disease.  **Bodily injury** does not include mental or emotional injury, suffering, or distress that does not result from a physical injury.
>
> \* \* \*
>
> 7.    **Damages** means compensation in the form of money for a person who claims to have suffered an injury.
>
> \* \* \*
>
> 9.    **Employee** includes a **leased worker**.  **Employee** does not include a **temporary worker**.
>
> \* \* \*
>
> 11.   **Insured** means:

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS     A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

a. **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner, if shown on the **declarations** as an individual;

b. **you** and all **your** partners or members and their spouses, but only with respect to the conduct of **your** business, if shown on the **declarations** as a partnership or a joint venture; or

c. **you** and all of **your** executive officers and directors, but only while acting within the scope of their duties, if shown on the **declarations** as an organization (other than a partnership or a joint venture).  It also includes **your** stockholders, but only for their liability as such.

**Insured** also includes:

a. any person or organization, except **your employees,** while acting as **your** real estate manager;

b. if **you** die during the policy period, **your** legal representative while acting within the scope of those duties as such, or a person who has custody of **your** property with respect to liability arising out of the maintenance or use of that property until **your** legal representative is appointed. **Your** legal representative has all **your** rights and duties under this coverage;

c. with respect to the operation, with **your** permission, of mobile equipment:

1) **your employee** in the course of employment. This does not apply to a fellow **employee** injured in the course of employment;

2) any other person; including another person or an organization legally liable for the conduct of such person, but only:

   a) for liability arising out of the operation of the equipment; and

   b) if there is no other insurance covering the liability available to them;

3) no person or organization is an **insured** fo **property damage** to property owned by, rented to, in the charge of, or occupied by **you,** or an employer of any person who is an **insured** under paragraph c.

d. **your employees**, for acts within the scope of their employment by **you** (this does not include **your**

46

executive officers) None of these **employees are insureds** for:

    1)    **bodily injury to you** or to a fellow **employee; or**

    2)    **property damage** to property owned by, rented to, or loaned to **employees,** or any of **your** partners or members and their spouses (if **you** are a joint venture or a partnership).

e.    any organization (other than a joint venture or a partnership) newly acquired or formed by **you,** and in which **you** have a majority interest.

Such an organization is not an **insured:**

    1)    if there is other similar insurance available to it;

    2)    after 90 days immediately following that acquisition or formation or the end of the policy period, whichever is earlier; or

    3)    for **bodily injury or property damage** that occurred prior to the acquisition or formation.

No person or organization is an **insured** with respect to the conduct of a current or past partnership or joint venture that is not named on the **declarations** as an **insured.**

\* \* \*

13.    **Limit** means the amount of coverage that applies.

\* \* \*

15.    **Occurrence** means an accident and includes repeated exposure to similar conditions.

\* \* \*

18.    **Property damage** means:

a.    physical injury or destruction of tangible property; or

b.    the loss of use of tangible property whether or not it is physically damaged. Loss of use is deemed to occur at the time of the **occurrence** that caused it.

\* \* \*

20.    **Terms** are all provisions, limitations, exclusions, conditions, and definitions that apply to the Commercial Liability Coverage.

105.    The 2017 policy contains an exclusion for expected or intended injuries and intentional and malicious acts:

**We** do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event.

**EXCLUSIONS THAT APPLY TO BODILY INJURY AND PROPERTY DAMAGE**

1.   **We** do not pay for **bodily injury** or **property damage**:
     a.   which is expected by, directed by, or intended by the **insured**; or
     b.   that is the result of intentional and malicious acts of the **insured**.
     This exclusion does not apply to **bodily injury** that arises out of the use of reasonable force to protect people or property.

106.   The 2017 policy does not provide coverage or a defense Play Hose for the claims made in the underlying complaint for Coverage L - Bodily Injury Liability Property Damage Liability coverage for at least the following reasons:

   a.   There has been no fortuitous event;

   b.   There has been no "bodily injury" as defined in the policy;

   c.   There has been no "property damage" as defined in the policy;

   d.   There has been no "occurrence" as defined in the policy;

   e.   Even if there were "bodily injury," "property damage" or an "occurrence" as defined in the policy alleged in the underlying complaint, any coverage under Coverage L would be excluded by exclusions (1)(a) and (1)(b);

   f.   Some or all of the alleged offenses did not occur during the policy period;

   g.   No defendant other than Play House is an "insured" as defined in the policy;

   h.   There is no coverage for double, treble, or punitive damages.

107.   The 2017 policy provides Coverage P – Personal and Advertising Injury

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS     A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

coverage pursuant to the following coverage agreement:

**COVERAGE P – PERSONAL INJURY LIABILITY**
**ADVERTISING INJURY LIABILITY**

**We** pay all sums which an **insured** becomes legally obligated to pay as **damages** due to **personal injury** or **advertising damage** to which this insurance applies.

1.  **We** cover:

    a.  **personal injury** arising out of an offense committed in the course of **your** business, excluding advertising, publishing, broadcasting, or telecasting done by **you** or on **your** behalf; and

    b.  **advertising injury** arising out of an offense committed in the course of advertising **your** goods, products, or services.

2.  The **personal injury** or **advertising injury** offense must be committed:

    a.  within the **coverage territory**; and

    b.  during the policy period.

108.   The 2017 policy provides the following additional relevant definitions:

The following definitions are added:

1.  **Advertising injury** means injury (other than **bodily injury**, **property damage**, or **personal injury**) arising out of one or more of the following offenses:

    a.  oral or written publication of material:

        1)   that slanders or libels a person or organization;

        2)   that disparages a person's or organization's goods, products, or services; or

        3)   that violates a person's right of privacy.

    b.  misappropriation of advertising ideas or style of doing business; or

    c.  infringement of copyright, title, slogan, trademark, or trade name.

2.  **Personal injury** means injury (other than **bodily injury**, **property damage**, or **personal injury**) arising out of one or more of the following offenses:

    a.  oral or written publication of material:

        1)   that slanders or libels a person or organization;

        2)   that disparages a person's or an organization's

**HARVEY KRUSE**   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

HARVEY KRUSE  A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

goods, products, or services; or

    3)    that violates a person's right of privacy.

b.    false arrest, detention, or imprisonment;

c.    malicious prosecution; or

d.    wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. This offense must be committed by or on behalf of the owner, landlord, or lessor of the room, dwelling, or premises.

109.    The 2017 policy excludes coverage under Coverage P for willful violation of an ordinance, statute, or regulation:

    9.    **We** do not pay for **personal** or **advertising injury** arising out of willful violation of an ordinance, statute, or regulation by an **insured** or with the **insured's** consent.

110.    The 2017 policy excludes coverage under Coverage P for publication known to be false:

    10.    We do not pay for **personal** or **advertising** injury arising out of:

    a.    oral or written publication of material done by or at the direction of an **insured** who knew it was false; or

    b.    oral or written publication of the same or similar material by or on behalf of an **insured** that took place prior to the policy.

111.    The 2017 policy excludes coverage under Coverage P for the failure to conform to advertised quality or performance:

    12.    **We** do not pay for **advertising injury** arising out of the failure of goods, products, or services to conform with advertised quality or performance.

112.    The 2017 policy does not provide coverage or a defense to Play House for the claims made in the underlying complaint for Coverage P – Personal Injury

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

Liability Advertising Injury Liability coverage for at least the following reasons:

    a.  There has been no fortuitous event;

    b.  There has been no "advertising injury" as defined in the policy;

    c.  There has been no "personal injury" as defined in the policy;

    d.  The underlying complaint alleges a personal injury offence committed in the course of advertising, publishing, broadcasting, or telecasting by Play House or on its behalf;

    e.  The underlying complaint does not allege oral or written publication;

    f.  The underlying complaint does not allege a violation of a right to privacy;

    g.  The underlying complaint does not allege slander or libel of a person;

    h.  The underlying complaint does not allege disparagement of a person's goods, product or services;

    i.  Some or all of the alleged offenses did not occur during the policy period;

    j.  Even if there were "advertising injury" or "personal injury" occurring during the policy period, coverage would be excluded by exclusions (9), (10), and (12);

    k.  No defendant other than Play House is an "insured" as defined in the policy;

    l.  There is no coverage for double, treble, or punitive damages.

113.  The 2017 policy contains a Punitive Damage Exclusion Endorsement.

114.  The Punitive Damage Exclusion Endorsement excludes coverage for punitive, exemplary, or vindictive damages:

> The following exclusion is added:
> **We** do not pay for punitive, exemplary, or vindictive **damages**.

115.  Under the terms of the 2017 policy, Badger Mutual owes no coverage for the

claims raised in the underlying complaint.

116.   The 2017 policy contains an Information Distribution and Recording Violations Exclusion endorsement.

117.   The Information Distribution and Recording Violations Exclusion endorsement excludes coverage for any claimed damage arising directly or indirectly out of a violation or alleged violation of any federal, state, or local law, regulation, statute, or ordinance regarding the distribution of material or information:

> The following exclusion is added:
> **We** do not pay for **bodily injury** or **property damage** (or **personal injury** or **advertising injury**, if provided by the Commercial Liability Coverage) arising directly or indirectly out of violations or alleged violations of:
>
> * * *
>
> d.   any other federal, state, or local law, regulation, statute, or ordinance that restricts, prohibits, or otherwise pertains to the collecting, communicating, recording, printing, transmitting, sending, disposal, or distribution of material or information.

118.   Under the terms of the 2017 policy, Badger Mutual owes no coverage for the claims raised in the underlying complaint.

119.   The 2017 policy contains a Cyber Liability Insurance endorsement.

120.   The Cyber Liability Insurance endorsement only provides coverage pursuant to the following coverage endorsement:

**SECTION I–CYBER LIABILITY COVERAGE AGREEMENTS**
In consideration of the premium paid and subject to all terms, conditions, definitions, exclusions and other provisions of this

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

Endorsement, **we** agree as follows:

A.   MULTIMEDIA LIABILITY COVERAGE

**We** will pay, up to the limits shown in the Schedule, the **damages** an **insured** becomes legally obligated to pay and **defense costs** resulting from a **claim** for an actual or alleged **multimedia peril**, but only if:

(1)   Such **claim** is first made against the **insured** during the **endorsement period**.

(2)   The **insured** reports such **claim** to **us** no later than sixty (60) days after the **claim** is first made against the **insured**; and

(3)   The **multimedia peril** takes place or first commences on or after the **retroactive date**.

B.   SECURITY AND PRIVACY LIABILITY COVERAGE

**We** will pay, up to the limits shown in the Schedule, the **damages** an **insured** becomes legally obligated to pay and **defense costs** resulting from a **claim** for an actual or alleged **security and privacy wrongful act**, but only if:

(1)   Such **claim** is first made against the **insured** during the **endorsement period**;

(2)   The **insured** reports such **claim** to **us** no later than sixty (60) days after the **claim** is first made against the **insured**; and

(3)   The **security and privacy wrongful act** takes place or first commences on or after the **retroactive date**.

C.   PRIVACY REGULATORY DEFENSE AND PENALTIES COVERAGE

**We** will pay, up to the limits shown in the Schedule, the **regulatory fines and penalties** and/or any **regulatory compensatory award** an **insured** becomes legally obligated to pay and **defense costs** resulting from a **claim** for an actual or alleged **security breach** or **privacy breach**, but only if:

(1)   Such **claim** is first made against the **insured** during the **endorsement period**;

(2)   The **insured** reports such **claim** to **us** no later than sixty (60) days after the **claim** is first made against the **insured**; and

(3)   The **security and privacy breach** takes place or first commences on or after the **retroactive date**.

\* \* \*

## SECTION II – DEFENSE, INVESTIGATION, AND SETTLEMENT

**We** will have the right and duty to defend any **claim** under Coverage Agreement A, Coverage Agreement B, Coverage Agreement C, or Coverage Agreement D, even if the allegations of the **claim** are groundless, false or fraudulent.  **We** have the right to appoint counsel to defend any such **claim**.

**We** may investigate or settle any **claim** at its sole discretion.  The applicable limits of insurance will be reduced and may be completely exhausted by payment of **defense costs**.  **We** will not be obligated to pay or defend any **claim** after the applicable limit of **our** liability hereunder has been exhausted.

No **insured** will incur any **defense costs** or other expenses, or settle any **claim**, assume any contractual obligation, admit liability, voluntarily make any payment, or otherwise consent to any settlement or judgment with respect to any **claim** without **our** prior written consent, which will not be unreasonably withheld. **We** will not be liable for any **defense costs** or other expenses, settlement or judgment to which **we** have not consented.

121.   The Cyber Liability Insurance endorsement provides the following relevant definitions:

When used in this Endorsement:

<div align="center">* * *</div>

J.      **Claim** means:

(1)     With respect to Coverage Agreement A (Multimedia Liability) and Coverage Agreement B (Security and Privacy Liability):

(a)     Any written demand for monetary or non-monetary relief made against an **insured**;

(b)     Any civil proceeding or arbitration proceeding initiated against an **insured**, commenced by the service of a complaint or similar pleading or notice; or

(c)     Any written request to toll or waive a statute of limitations relating to a potential **claim** against an **insured**, including any appeal therefrom;

<div align="center">54</div>

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS     A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

A **claim** under Coverage Agreement A or Coverage Agreement B will be deemed to be first made when an **insured** first receives notice of any of (1)(a) through (1)(c) above.

(2)   With respect to Coverage Agreement C (Privacy Regulatory Defense and Penalties), a **government investigation** commenced against an **insured** by letter, notice, complaint, or order of investigation. A **claim** under Coverage Agreement C will be deemed to be first made when it is first received by an **insured**.

(3)   With respect to Coverage Agreement D (PCI DSS Assessment Coverage), any written demand made against an **insured** by an **acquiring bank** or **card association** for a **PCI DSS assessment** due to the **insured's** non-compliance with **PCI Data Security Standards**. A **claim** under Coverage Agreement D will be deemed to be first made when such written demand is received by an **insured**.

(4)   With respect to Coverage Agreement E (Privacy Breach Response Costs, Notification Expenses, and Customer Support and Credit Monitoring Expenses), **your** report to **us** of an **adverse media report**, **security breach,** or **privacy breach**. A **claim** under Coverage Agreement E will be deemed to be first made when such report is received by **us** or **our** authorized agent.

(5)   With respect to Coverage Agreement F (Network Asset Protection), **your** report to **us** of a **covered cause of loss**. A **claim** under Coverage Agreement F will be deemed to be first made when such report is received by **us** or **our** authorized agent.

(6)   With respect to Coverage Agreement G (Cyber Extortion), **your** report to **us** of a **cyber extortion threat**. A **claim** under Coverage Agreement G will be deemed to be first made when such report is received by **us** or **our** authorized agent.

(7)   With respect to Coverage Agreement H (Cyber Terrorism), **your** report to **us** of an **act of cyber terrorism**. A **claim** under Coverage Agreement H will be deemed to be first made when such report is received by **us** or **our** authorized agent.

(8)   With respect to Coverage Agreement I (BrandGuard), **your** report to **us** of **brand loss** directly caused by an

adverse **media report** or **notification**. A **claim** under Coverage Agreement I will be deemed to be first made when such report is received by **us** or **our** authorized agent.

\* \* \*

T.  **Damages** means the amount of money an **insured** is legally obligated to pay as a result of a covered **claim** under Coverage Agreement A or Coverage Agreement B, including judgments, legal fees and costs awarded against an **insured** pursuant to such judgments, and settlements negotiated with **our** consent. **Damages** does not include:

(1)  Taxes;

(2)  Any amount for which an **insured** is absolved from legal responsibility to make payment to a third party;

(3)  Amounts owed under contract;

(4)  **Your** future profits or royalties or any return, withdrawal, restitution or reduction of **your** professional fees, profits or other charges;

(5)  Punitive, liquidated or exemplary damages or the multiplied portion of multiplied damages;

(6)  Fines, sanctions or penalties;

(7)  Any matters that are deemed uninsurable under applicable law;

(8)  The costs to comply with orders granting injunctive or non-monetary relief, including specific performance or any agreement to provide such relief;

(9)  Disgorgement of any remuneration or financial advantage to which **you** were not legally entitled; or

(10)  Settlements negotiated without **our** consent.

\* \* \*

V.  **Defense costs** means reasonable and necessary legal fees, costs and expenses incurred with **our** consent in the investigation, defense and appeal of any **claim** under Coverage Agreement A, Coverage Agreement B, Coverage Agreement C, or Coverage Agreement D. **Defense costs** does not include any wages, salaries, fees, overhead or other charges incurred by, or paid to, any **insured** for any time spent in cooperating in the defense and investigation of any **claim** or potential **claim** under this Endorsement.

\* \* \*

BB.  **Endorsement period** means the period of coverage

**HARVEY KRUSE**  ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION  1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

commencing on the effective date specified on this Endorsement and ending on the earlier of the termination, expiration or cancellation date of the policy to which this Endorsement attaches. **Endorsement period** does not include any extended reporting period.

\* \* \*

FF.  **Insured** means the **named insured** and current executive officers, partners, directors, stockholders, trustees, or employees of the **named insured**, but only while such individuals are acting within the scope of their duties on behalf of the **named insured**.

\* \* \*

HH.  **Internet** means the worldwide public network of computers which enables the transmission of electronic **data** between different users, including a private communications network existing within a shared or public network platform.

\* \* \*

KK.  **Multimedia peril** means the release or display of any **electronic media** on **your internet** site or **print media** for which **you** are solely responsible, which directly results in any of the following:

(1)  Any form of defamation or other tort related to the disparagement or harm to the reputation or character of any person or organization, including libel, slander, product disparagement, or trade libel

(2)  Invasion, infringement or interference with an individual's right of privacy including false light, intrusion upon seclusion, commercial misappropriation of name, person, or likeness, and public disclosure of private facts;

(3)  Plagiarism, piracy, or misappropriation of ideas under an implied contract;

(4)  Infringement of copyright, trademark, trade name, trade dress, title, slogan, service mark or service name; or

(5)  Domain name infringement or improper deep-linking or framing.

LL.  **Named insured** means the person(s) or organization(s) listed on the Declarations of the Policy to which this Endorsement is attached.

MM.  **Notification** means **notification** to individuals in the event of a **security breach** or a **privacy breach**.

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

* * *

VV.  **Privacy breach** means any of the below, whether actual or alleged, but only if committed or allegedly committed by **you** or by others acting on **your** behalf for whom **you** are legally responsible, including **BPO service providers** and **outsourced IT service providers**:

(1)  A common law breach of confidentiality, infringement, or violation of any right to privacy, including, but not limited to, a breach of **your** privacy policy, false light, intrusion upon a person's seclusion, commercial misappropriation of name, person, or likeness, or public disclosure of a person's private information; or

(2)  Any breach of privacy regulations, as they currently exist and as amended, associated with the confidentiality, access, control, and use of personally identifiable, non-public information, including, but not limited to:

(a)  Health Insurance Portability and Accountability Act of 1996 (Public Law 104- 191), known as HIPAA, and related state medical privacy laws;

(b)  Gramm-Leach-Bliley Act of 1999 (G-L-B), also known as the Financial Services Modernization Act of 1999;

(c)  State and federal statutes and regulations regarding the security and privacy of consumer information;

(d)  Governmental privacy protection regulations or laws associated with the control and use of personal information;

(e)  Privacy provisions of consumer protection laws, including the Federal Fair Credit Reporting Act (FCRA) and similar state laws;

(f)  Title XIII, the Health Information Technology for Economic and Clinical Health Act ("HITECH"), of the American Recovery and Reinvestment Act of 2009 ("ARRA").

A series of continuing **privacy breaches** or related or repeated **privacy breaches** will be considered a single **privacy breach** and will be deemed to have occurred when the first of such **privacy breaches** occurred.

WW. **Privacy breach response costs** means those reasonable and necessary fees and expenses **you** incur, with **our** prior written consent, for the employment of a public relations consultant, if

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

such action is deemed to necessary in order to avert or mitigate any actual or potential material damage to **your reputation** or brands, which results or reasonably will result from the publication of an **adverse media report**.

\* \* \*

AAA. **Regulatory compensatory award** means a sum of money an **insured** is legally obligated to pay as an award or fund for affected individuals, including a regulatory agency's monetary award to a third party, due to an adverse judgment or settlement arising out of a **government investigation**. **Regulatory compensatory award** does not include a criminal penalty or fine issued by a regulatory agency of any kind, including federal, state, or local governmental agencies.

BBB. **Regulatory fines and penalties** means any civil fines and penalties imposed against an **insured** as a result of a **government investigation.**

\* \* \*

DDD. **Retroactive date** means the date specified as such on this Endorsement, on or after which any **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report** must have taken place in order to be considered for coverage under this Endorsement.

EEE. **Security and privacy wrongful act** means any of the following acts, whether actual or alleged, but only if committed or allegedly committed by an **insured**:

(1) Failure to prevent or hinder **a security breach** that in turn results in:

    (a) The alteration, copying, corruption, destruction, deletion, or damage to electronic **data** stored on an **insured computer system**;

    (b) Theft, loss or unauthorized disclosure of electronic and nonelectronic confidential commercial, corporate, personally identifiable, or private information that is in **your** care, custody or control;

    (c) Theft, loss, or unauthorized disclosure of electronic and nonelectronic confidential commercial, corporate, personally identifiable, or private information that is in the care, custody or

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

**HARVEY KRUSE** A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800

control of a **BPO service provider** or **outsourced IT service provider** that is holding, processing, or transferring such information on **your** behalf; provided, however, that the theft, loss or unauthorized disclosure occurs while **your** written contract with such **BPO service provider** or **outsourced IT service provider** is in effect; or

(d) **Unauthorized use** of, or **unauthorized access** to, a **computer system** other than an **insured computer system**.

(2) Failure to timely disclose a **security breach** affecting personally identifiable, nonpublic information or the failure to dispose of personally identifiable, nonpublic information within the required time period, in violation of privacy regulations in effect now or in the future;

(3) Failure to prevent the transmission of **malicious code** or **computer virus** from an **insured computer system** to the **computer system** of a third party;

(4) A **privacy breach**;

(5) Failure to prevent or hinder participation by an **insured computer system** in a **denial of service attack** directed against **internet** sites or the **computer system** of any third party; or

(6) Loss of employee information.

FFF. **Security breach** means:

(1) **Unauthorized access** to, or **unauthorized use** of, an **insured computer system**, including **unauthorized access** or **unauthorized use** resulting from the theft of a password from an **insured computer system** or from any **insured**;

(2) A **denial of service attack** against an **insured computer system**; or

(3) Infection of an **insured computer system** by **malicious code** or the transmission of **malicious code** from an **insured computer system**, whether any of the foregoing is a specifically targeted attack or a generally distributed attack. A series of continuing **security breaches**, relate or repeated **security breaches**, or multiple **security breaches** resulting from a continuing failure of computer security will be considered a single **security breach** and will be deemed to have occurred when the first of such

**security breaches** occurred.

\* \* \*

KKK.   **We**, **us**, and **our** mean the Company providing this coverage.

LLL.   **You** and **your** mean the **named insured**.

122. The Cyber Liability Insurance endorsement provides the following exclusions:

The insurance provided under this Endorsement does not apply to:

A.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report**:

   (1)   Which was the subject of written notice given to us or to any other insurer prior to your initial effective date of Cyber Liability coverage;

   (2)   Which was the subject of any prior and/or pending written demand made against an **insured**, or a civil, administrative or arbitration proceeding commenced against an **insured**, prior to **your** initial effective date of Cyber Liability coverage, or that involved the same or substantially the same fact, circumstance, or situation underlying or alleged in such prior demand or proceeding;

   (3)   Which an **insured** had knowledge of prior to **your** initial effective date of Cyber Liability coverage.

\* \* \*

E.   Any **claim** based covered under any other section of the Policy to which this endorsement attaches.

\* \* \*

H.   Any **claim** for unfair competition, price fixing, deceptive trade practices, restraint of trade, or violation of any anti-trust laws.

\* \* \*

O.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

   (1)   Any willful, deliberately dishonest, malicious, or fraudulent act or omission;

   (2)   Any intentional violation of the law or of **your** privacy

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

**HARVEY KRUSE**

ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

policy; or

(3)     The gaining in fact of any profit, remuneration or financial advantage to which an **insured** was not legally entitled.

If committed by any insured, whether acting alone or in collusion with other persons.   Notwithstanding the foregoing, the insurance afforded by this Endorsement will apply to **defense costs** incurred in defending any such **claim** until such time as there is a judgment or other final adjudication adverse to the **insured** establishing such willful, dishonest, fraudulent, or malicious conduct.   **We** will have the right to recover **defense costs** incurred in defending such **claim** from those parties found to have committed such willful, dishonest, fraudulent, or malicious conduct.

This exclusion does not apply to:

(1)     Any **insured** that did not commit, participate in, cooperate in, contribute to, or have knowledge of any willful, dishonest, fraudulent, or malicious conduct described in this exclusion; or

(2) A **claim** resulting from sabotage by your **employee**.

P.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

(1)     Any actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report** that took place or first commenced prior to the **retroactive date**; or

(2)     Any actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach, covered cause of loss, cyber extortion threat, act of cyber terrorism**, or **adverse media report** that took place on or after the **retroactive date**, which, together with an actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report** that took place prior to the **retroactive date**, would constitute related **multimedia perils**, **security and privacy wrongful acts**, **security breaches**, **privacy breaches**,

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

covered causes of loss, **cyber extortion threats**, **acts of cyber terrorism**, or **adverse media reports**.

For purposes of this exclusion, **multimedia perils**, **security and privacy wrongful acts**, **security breaches**, **privacy breaches**, **covered causes of loss**, **cyber extortion threats**, **acts of cyber terrorism** or **adverse media reports** will be deemed related if we determine that they are logically or causally connected by any common fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

\* \* \*

Y.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services.

\* \* \*

NN.   Any fines or penalties imposed due to willful or intentional acts of an **insured**.

123.   The Cyber Liability Insurance endorsement contain a notice provision setting proper notice as a condition precedent to coverage:

A.   NOTICE OF A CLAIM

(1)   As a condition precedent to coverage under Coverage Agreement A, B, C or D, **you** must give **us** or **our** authorized agent notice of any **claim** made against an **insured** no later than sixty (60) days after the **claim** is first made against the **insured**.

(2)   As a condition precedent to coverage under Coverage Agreement E, F, G, H or I, **you** must give **us** or **our** authorized agent notice of **your claim** during the **endorsement period**, but no later than 60 days from the date any **insured** first discovers the event or incident giving rise to such **claim**.

(3)   **You** must provide **us** with copies of all documentation comprising the **claim** as well as any authorization, cooperation, or assistance as **we** may require.

(4)   **We** will not be obligated to pay any amounts incurred prior to **our** receipt of a **claim** or any amounts incurred without **our** prior written consent.

B.    NOTICE OF A POTENTIAL CLAIM

If, during the **endorsement period**, any **insured** first becomes aware of any facts or circumstances which could give rise to a **claim** covered under this Endorsement, and **you** provide **us** or **our** authorized agent with notice during the **endorsement period** of:

(1)    The details regarding such facts or circumstances;

(2)    The nature of the loss incurred;

(3)    The identity of the potential claimant(s) involved;

(4)    The manner in which the **insured** first became aware of the facts or circumstances; and

(5)    The consequences which have resulted or may result,

then any **claim** subsequently arising out of such reported facts or circumstances will be deemed to be a **claim** first made on the date notice complying with the foregoing requirements was first received by **us**.

124.   The 2017 policy does not provide coverage or a defense to Play House for the claims made in the underlying complaint for Cyber Liability Insurance endorsement coverage for at least the following reasons:

a.   There has been no fortuitous event;

b.   There has been no "damages" as defined in the endorsement;

c.   There are no "defense costs" as defined in the endorsement;

d.   There has been no "multimedia peril" as defined in the endorsement;

e.   Any claim was not first made during the endorsement period;

f.   The insured did not timely report any claim;

g.   Any claimed "multimedia peril" did not first commence on or after the "retroactive date" as defined in the endorsement;

h.   There has been no "security and privacy wrongful act" as defined in the endorsement;

i.   Any claimed "security and privacy wrongful act" did not first commence on or after the "retroactive date" as defined in the endorsement;

j.   There has been no "regulatory fines and penalties" as defined in the

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

policy;

k. There has been no "regulatory compensatory award" as defined in the policy;

l. There has been no "security breach" as defined in the policy;

m. There has been no "privacy breach" as defined in the policy;

n. Any claimed "security breach" or "privacy breach" did not first commence after the retroactive date;

o. Any "claim" was not first made against the insured during the "endorsement period" as defined in the policy;

p. Any "security and privacy breach" did not first commence on or after the "retroactive date" as defined in the policy;

q. Even if such requirements were met, coverage would be excluded pursuant to Exclusions (A), (E), (H), (O), (P), (Y) and (NN);

r. No defendant other than Play House is an "insured" as defined in the policy;

s. There has been a failure to comply with the required notice provisions;

t. There is no coverage for double, treble, or punitive damages.

125. Under the terms of the 2017 policy, Badger Mutual owes no coverage for the claims raised in the underlying complaint.

WHEREFORE, Badger Mutual prays for a judgment that it has no duty to provide coverage or a defense to Play House or anyone else for any of the allegations and claims made against it in the underlying complaint and that Badger Mutual is entitled to is costs and attorney fees for having to file this action.

**HARVEY KRUSE** A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800

Respectfully submitted,

HARVEY KRUSE, P.C.

*/s/ John R. Prew*
John R. Prew (P41891)
Nathan Peplinski (P66596)
Attorneys for Badger Mutual
1050 Wilshire Drive, Suite 320
Troy, MI 48084
Dated: November 2, 2018          (248) 649-7800

## **DEMAND FOR JURY TRIAL**

NOW COMES the plaintiff, Badger Mutual Insurance Company, by and through its attorneys HARVEY KRUSE, P.C., and hereby demands a trial by jury.

Respectfully submitted,

HARVEY KRUSE, P.C.

*/s/ John R. Prew*
John R. Prew (P41891)
Nathan Peplinski (P66596)
Attorneys for Badger Mutual
1050 Wilshire Drive, Suite 320
Troy, MI 48084
Dated: November 2, 2018          (248) 649-7800

**HARVEY KRUSE** A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800